IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IN RE: HEILIG-MEYERS COMPANY, et al., <br><br> Debtors. <br><br> WACHOVIA BANK, N.A., for Itself and as Collateral Agent for Pre-Petition Secured Lenders, <br><br> Appellant, <br><br> v. <br><br> HMY ROOMSTORE, INC., et al., <br><br> Appellees. | Civil Action Number 3:05MC008-JRS |

## **MEMORANDUM OPINION**

THIS MATTER comes before the Court on the Motion of Wachovia Bank, N.A., for itself and as collateral agent for the pre-petition secured lenders (collectively "Wachovia"), pursuant to Rule 8005 of the Rules of Bankruptcy Procedure, for a Stay of Order Entered by the Bankruptcy Court Confirming Plan of Reorganization of HMY RoomStore, Inc. ("RoomStore"). On June 1, 2005, Judge Douglas Tice, of the United States Bankruptcy Court, issued an order denying Wachovia's motion for a stay. On June 7, 2005, this Court was treated to a very thorough oral argument on the motion and announced its decision from the bench denying Wachovia's request, with this Opinion to follow.

When seeking a stay pending appeal, the movant has the burden of demonstrating "(1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that the other parties will not be substantially harmed by the stay, and (4) that the

public interest will be served by granting the stay." Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970). These four factors are analyzed under the framework set forth in Blackwelder Furniture Company v. Seilig Manufacturing Company, 550 F.2d 189, 196 (4th Cir. 1977), for assessing preliminary injunctions. See Skinner v. SBA (In re Skinner), 202 B.R. 867, 868 (W.D. Va. 1996). These factors are not accorded equal weight and often the result is dictated by the balance of the hardships. Comparing the relevant harm to the appellee by issuing the stay to the injury appellant will suffer without the stay will govern how strong a likelihood of success showing the plaintiff must make. See Hughes Network Systems, Inc. v. InterDigital Communications Corp., 17 F.3d 691, 693 (4th Cir. 1994) [hereinafter "Hughes"].

Initially, the Court must balance the hardship imposed upon the non-movant by granting the injunction against the harm that the movant will suffer if the injunction is not granted. See Blackwelder, 550 F.2d at 196. If the harms are evenly balanced or if RoomStore is more likely to be harmed, then Wachovia must make a stronger showing of success on the merits. "The importance of probability of success increases as the probability of irreparable injury diminishes." Id. at 195. However, if the balance clearly favors the movant, the Court need only find that the movant has raised "questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Id. (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953).

At bottom, "a preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." Hughes, 17 F.3d at 693. In seeking a stay pending appeal, the movant asks the district court to stop a party from acting or taking action at a time when the court is just becoming familiar with the record; in this setting, the danger of a mistake is substantial. This is especially true with regard to this appeal which has been on the

Bankruptcy Court's docket since August of 2000.[1] To address these concerns, "courts have insisted that the harm necessary to justify issuance of a preliminary injunction be irreparable." Id. at 694. As the Supreme Court instructs

> [t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Sampson v. Murray, 415 U.S. 61, 90 (1974). Consequently, "[w]here the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable." Hughes. 17 F.3d at 694. This general rule holds true absent extraordinary circumstances.[2]

i.

In denying Wachovia's motion for a stay, the Bankruptcy Court found that

> Wachovia has failed to demonstrate that it will suffer irreparable injury should the stay be denied because a meaningful judicial remedy can be fashioned with respect to the assets of the Affiliated Debtors' bankruptcy estates in the unlikely event Wachovia is successful on appeal. The record reflects that the value of the Affiliated Debtor's bankruptcy estates exceeds Wachovia's purported claim for post-petition interest, fees, and costs.

---

[1] To give a sense of the scope to the total record in this case, Judge Tice's Order denying the stay is Docket No. 6096.

[2] Examples of such extraordinary circumstances include where the moving party's business cannot survive absent the injunction or where "damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." Hughes, 17 F.3d at 694 (quoting Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984)). The evidence before the Court does not indicate that either possibility is looming, although RoomStore's emergence from bankruptcy indicates that the latter condition is at least possible.

Order Denying Motion for Stay of Confirmation Order, ¶ 4 (Bankr. E.D. Va., June 1, 2005) [hereinafter "Bankruptcy Order"].  Additionally, Judge Tice concluded that "unlike Wachovia . . . RoomStore and its unsecured creditors will suffer irreparable harm if the stay is entered." Bankruptcy Order, ¶ 5. Continuing, the Bankruptcy Court stated that delaying consummation of the bankruptcy plan would "impact negatively RoomStore's ongoing operations which, in turn, will impair significantly the reorganization value of RoomStore" and "interfere with RoomStore's proposed exit financing commitment set to expire on June 1, 2005." Id.

Additionally, the Judge Tice determined that Wachovia did not demonstrate a substantial likelihood os success on the merits of its appeal.  The court cited the specific failings of Wachovia's due process arguments and noted particularly Wachovia's own initiative in raising the possible limitation on its secured claim in its objection to the confirmation plan.  Finally, Judge Tice noted the public's interest "in promoting the successful reorganization of chapter 11 debtors" as a factor weighing in favor of denying the stay.  Id. at ¶ 7.

ii.

In reviewing a bankruptcy court's ruling, this Court takes on the mantle on a appellate court which generally reviews conclusions of law de novo and applies a clearly erroneous standard to findings of fact.  However, a renewed motion to stay pending appeal slightly alters the traditional standard.  When the bankruptcy court has denied a stay after fully considering the motion on the merits, the district court, i.e. appellate court, must give weight to the ruling by the court below.  See Long, 432 F.2d at 979 ("Ordinarily, when a party seeking a stay makes application to an appellate judge following the denial of a similar motion by a trial judge, the burden of persuasion on the moving party is substantially greater than it was before the trial judge.").

Judge Tice heard argument on this matter before entering his order.  Accordingly, greater

deference is afforded the bankruptcy court and a higher burden is placed on the moving party. Tenzer Greenblatt, LLP v. New British Woods Associates, 1996 U.S. Dist LEXIS 14584, *6 (E.D. N.C. 1996) (citing Rhoten v. Third Nat'l Bank, 31 Bankr. 572, 577 (M.D. Tenn. 1983) (limiting the role of the district court to a review of whether the bankruptcy court abused its discretion)). While the Court heard oral argument on this motion, there is no doubt that the Bankruptcy Court's familiarity with this case exceeds this Court's and certainly merits a greater degree of deference.

### iii.

RoomStore filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 16, 2000. Almost five years later on March 9, 2005, RoomStore and the Official Committee of Unsecured Creditors filed their Plan of Reorganization (the "Plan") with the Bankruptcy Court. On May 18, 2005, Judge Tice, in a thorough order, confirmed the plan and resolved Wachovia's objections. In advance of the confirmation hearing, Wachovia raised an objection to confirmation of the proposed Plan due to its elimination of Wachovia's secured liens. The substance of Wachovia's objection necessitated that the Bankruptcy Court resolve the objection during the confirmation hearing.[3] The Bankruptcy Court overruled Wachovia's objection when it entered its May 18 order.

RoomStore and Wachovia are contesting the value of Wachovia's secured claims. RoomStore contends that the secured portion of Wachovia's claim is capped at $128.5 million, including interest, fees and costs arising under certain credit and security agreements, referred to as

---

[3]In the Bankruptcy Order, Judge Tice explained that Wachovia was "(i) fully apprised of the issues to be litigated at the confirmation hearing; (ii) afforded a full and fair opportunity to engage in discovery; (iii) afforded a full and fair opportunity to litigate meaningfully its claim for post-petition interest, fees and costs, and (iv) not in any way prejudiced by the Court's resolution of the collateral cap issues at the Confirmation Hearing." Bankruptcy Order ¶ 6.

the "Collateral Cap." RoomStore insists that since August of 2000, Wachovia has received in excess of $137 million in cash, in addition to other transfers, which satisfied its claim in full. Accordingly, RoomStore sought to recover all payments made in excess of $128.5 million. Shortly after RoomStore filed its Plan of Reorganization, it filed an action against Wachovia seeking to determine the extent of Wachovia's interest in RoomStore's assets.

On March 4, 2005, RoomStore moved for summary judgment on the issue of Wachovia's secured interests. These secured interests were the result of two orders entered by the Bankruptcy Court in September of 2000 (the "Adequate Protection Orders"). The orders provided Wachovia and the other secured lenders with post-petition replacement liens on certain assets held by RoomStore in order to protect the value of their collateral. See 11 U.S.C. § 361(2). According to Judge Tice's Order Confirming the Plan, pursuant to the Adequate Protection Orders, RoomStore has remitted to Wachovia, including the proceeds from the sale of certain pre-petition collateral, sums totaling not less than $122,234,000. Wachovia is holding in escrow approximately $14,785,000 in proceeds from a separate sale pending resolution of this issue.

Much of the dispute presented by this eventual appeal arises out a financial restructuring that occurred on May 25, 2000. The restructuring produced a series of documents and agreements, including letters of credit as well as collateral agreements. RoomStore was not a party to the May 25 transactions. However, RoomStore was one of the six debtors who filed for bankruptcy in August of 2000. Following the bankruptcy filing, Judge Tice entered the adequate protection orders mentioned previously. During the bankruptcy proceedings, the collective debtors decided to liquidate the debtors' estates with the exception of RoomStore. RoomStore continued to operate and Wachovia received payments from the asset liquidation.

In its action to settle the extent of Wachovia's secured claims, RoomStore relies on

subparagraph (ii) of the definition of "secured obligations" in the Intercreditor Agreement. RoomStore insists that the amount of Wachovia's secured claims cannot exceed the amount specified in the definition of "secured obligations." The definition of "secured obligations" reads as follows:

> (i) amounts owing under the Prudential Note Agreement and the related Credit Documents; <u>provided</u> that the maximum amount of such indebtedness that shall be secured by the liens and security interests hereunder and that shall constitute Secured Obligations hereunder shall be $41.8 million,
> (ii) obligations (including reimbursement obligations) owing in respect of letters of credit given in support of workers' compensation programs issued under the Bank Credit Agreement; and
> (iii) (A) loans and obligations (other than obligations in respect of letters of credit given in support of workers' compensation programs covered under the immediately preceding clause (ii) above) owing under or in respect of the Bank Credit Agreement and the related Credit Documents (as defined in the Bank Credit Agreement); (B) amounts owing under or in respect of the Wachovia Lease Financing, including amounts owing under leases and guaranties issued thereunder, and (C) amounts owing under or in respect of the FUNB Lease Financing, including amounts owing under leases and guaranties thereunder; <u>provided</u> that the maximum amount of such indebtedness under this clause (iii) that shall be secured by the liens and security interests hereunder and that shall constitute Secured Obligations hereunder shall be $48.2 million.

The Intercreditor Agreement which created the secured obligations stated that "the aggregate amount of indebtedness and obligations secured thereby shall not, in any event, exceed the amounts provided in the definition of 'Secured Obligations' under the Security Agreement given in connection herewith."

RoomStore insists that the full face amount of the workers' compensation letters of credit referred to in subparagraph (ii) of the definition of "secured obligations" is $38.5 million.[4] Adding

---

[4]Wachovia agrees that the principal amount of the obligations under the letters of credit was $38.5 million as of the petition date.

this amount to the amounts specified in subparagraphs (i) and (iii), the total amount of secured obligations, according to RoomStore, is $128.5 million. Wachovia contends that the definition does not place a firm cap on the secured obligations. Wachovia notes that subparagraph (ii) does not contain a stated dollar amount. Additionally, the face amount of the letters of credit is not capped nor is the right to recover fees and expenses capped. In fact, Wachovia claims that the letters of credit clearly state that the secured lenders are entitled to recover all costs, expenses, attorneys' fees and interest incurred as part of the letters of credit obligations and that the parties intended to secure these additional amounts by encumbering collateral worth more than their secured claim.[5]

Wachovia claims that paragraph 8.4 of the Intercreditor Agreement contradicts RoomStore's claim that the secured claim is capped. Paragraph 8.4 provides, in relevant part, that "[n]otwithstanding any provisions to the contrary herein or in the Security Documents, the Collateral Agent [Wachovia] shall be entitled to recover costs and expenses incurred in connection with execution of its duties as Collateral Agent and in exercising rights or remedies hereunder or thereunder and in taking possession of, protecting, preserving or disposing of collateral before payment of or application to the Secured Obligations." Wachovia insists that the parties did not intend to limit its secured obligations to the principal amount of the debt. Wachovia suggests that the amount of its claim includes its attorneys' fees and that the court need only look to the value of the collateral conveyed to establish the parties' intentions.

---

[5]Wachovia never states in its motion for stay the amount that it seeks to recover in excess of the $128.5 million. What is clear is that Wachovia does not want to disgorge the approximately $8.5 million held in escrow. At oral argument, Wachovia stated that its secured claim was comprised of two components: the $128.5 principal balance as of the petition date, plus $19.5 million in interest and expenses accruing over a five year period. Wachovia informed the Court that its testifying expert at the Confirmation Hearing assessed the value of collateral securing the lenders' claim was $161 million.

Wachovia's interest in RoomStore is a result of the interaction of RoomStore's reorganization plan and the other five debtors' liquidation plans. RoomStore's plan transfers property from the liquidating debtors to RoomStore. Wachovia's liens are secured by two of the main assets being transferred - the name "RoomStore" and the financial operations and reporting software - as well as certain other of RoomStore's assets. Wachovia takes issue with the plan because it, according to Wachovia, ignores the liens. Wachovia's present argument is that the Bankruptcy Court erred with regard to the cap on the secured claim, erred in determining Wachovia to be an unsecured creditor and erred in addressing the cap issue as part of the Confirmation hearing.

In its May 18 Order, the Bankruptcy Court concluded, pursuant to 11 U.S.C. § 506(a), that Wachovia's secured claim could not exceed $128.5 million because it was contractually limited to that amount. Judge Tice found that

> [a]s the total principal amount of [Wachovia's] claim as of the Petition Date is greater than the contractually limited secured portion of such claim, the Pre-Petition Secured Lenders are undersecured creditors for purposes of section 506(a) and (b) of the Bankruptcy Code. Consequently, any claim asserted by [Wachovia] for interest, charges or other costs accrued or incurred subsequent to the Petition Date are properly excluded from the allowed secured claim of [Wachovia].
> As the value of the Adequate Protection Payments exceeds the maximum amount of [Wachovia's] allowed secured claim under section 506(a) of the Bankruptcy Code, termination of the Replacement Liens is appropriate and without prejudice to Wachovia. Similarly, satisfaction of the Super-Priority Claim, if any, has been provided for through the Adequate Protection Payments.

<u>In re: HMY RoomStore, Inc.</u>, Case No. 00-34536, Order of Confirmation: Statement of Facts and Conclusions of Law (Bankr. E.D. Va., May 18, 2005) (internal citations omitted). To that effect, the Bankruptcy Court ordered Wachovia to disgorge to RoomStore any payments made by RoomStore in excess of $128.5 million. Additionally, the Order declared the replacement liens and super-priority claims granted under the Adequate Protection Orders null and void.

<u>iv.</u>

In response to Wachovia's motion for a stay, RoomStore argues that Wachovia cannot demonstrate that it will suffer any harm if the stay is not granted. RoomStore claims that the stay is unnecessary because the assets of the reorganized RoomStore are more than sufficient to cover any remaining claims that may be restored to Wachovia by its appeal. RoomStore presented evidence during the confirmation hearing that placed the value of the reorganized RoomStore's stock at $45 million. According to RoomStore, 70 percent, or approximately $30 million, of the stock goes to the debtors. This $30 million is available as replacement collateral for their extinguished liens.

In this motion, not only do the balance of harms not favor Wachovia, the Court sees no set of facts which indicate Wachovia will suffer irreparable harm without a stay. Although not mentioned at oral argument, Wachovia's brief discusses the possibility that its appeal will be equitably moot if the plan is consummated and the funds provided by the exit financiers are expended. This contention is simply without merit. The doctrine of equitable mootness advances a pragmatic recognition that after a period of time has passed and a judgment implemented, it may prove "impractical, imprudent and therefore inequitable" to review such a judgment. <u>Retired Pilot's Assoc. of U.S. Airways Group, Inc. v. U.S. Airways Group, Inc.</u>, 369 F.3d 806, 809 (4th Cir. 2004).[6]

However, "[o]rders confirming plans of reorganizations do not become immune from appellate review upon their partial, or even substantial, consummation." <u>Central States v. Central Transp., Inc.</u>, 841 F.2d 92, 96 (4th Cir. 1988). For the most part, an appeal is moot if the implementation of the plan has created, extinguished or modified rights, particularly of persons not

---

[6]Unlike the pilot's association, Wachovia sought a stay of the Bankruptcy Judge's order and raised an objection to the implementation of the reorganization plan.

before the Court, "to such an extent that effective judicial relief is no longer practically available." In re Convenience U.S.A., Inc., 290 B.R. 558, 562 (Bankr. M.D.N.C. 2003). The injury to Wachovia by not staying the confirmation order is not irreparable, nor is effective judicial relief unavailable, because Wachovia can always be made whole by an award of money damages or by new liens on the reorganized collateral.

The evidence supports the Bankruptcy Court's findings that the bankruptcy estate exceeds Wachovia's claims for interest, fees and costs. Wachovia has not demonstrated to the Court that the harm RoomStore will suffer by delaying its emergence from bankruptcy, including the impact on its employees and its ability to conduct ongoing operations, is in any way less than the harm Wachovia will suffer because the lenders' claims for attorneys' fees and interest are unsecured pending its appeal. "A plaintiff has the burden of proving a clear showing of immediate irreparable injury." Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1992). Wachovia's claim for money simply does not convince the Court that its injuries are irreparable. Whereas the threat posed to RoomStore's exit financing and the prospect of the loss of key personnel if the plan is stayed, represent the type of irreparable harm that weighs against granting the stay.

v.

With the balance of hardships test clearly favoring RoomStore, Wachovia must demonstrate a *strong* likelihood of success on the merits. Wachovia advances two contentions: denial of procedural due process and error with regard to its status as an under-secured creditor. First, Wachovia takes issue with the manner in which the Bankruptcy Court resolved the cap issue. However, Wachovia's due process argument is unsatisfying in the sense that Wachovia does not indicate to the Court how it suffered in its argument to the Bankruptcy Court at the Confirmation Hearing or what additional evidence it would have presented in a separate adversary proceeding.

Wachovia insists that it is entitled to an adversary proceeding under Rule 7001 "to determine the validity, priority, or extent of a lien or other interest in property." Bankr. R. 7001(2). However, courts have excused the requirement of a formal adversary proceeding, with all the associated procedural requirements, in the interests of judicial economy and as long as adequate measures are taken to ensure that affected parties are not prejudiced. See In re Service Merchandise Co., 256 B.R. 755, 765 (Bankr. M.D. Tenn. 2000) ("Despite the fact that an adversary proceeding is required for the injunctive relief sought by the debtors, courts in many instances have found that judicial economy permits the courts to look beyond [Bankruptcy] Rule 7001 to the merits of the dispute provided no prejudice will result."). In addition, courts are willing to bypass the procedural demands of Rule 7001 when the evidentiary record has been adequately developed for purposes of a decision on the merits. See In re Braniff Intern. Airlines, Inc., 164 B.R. 820, 831 (Bankr. E.D.N.Y. 1994) (reaching the merits of dispute despite procedural irregularity where record is adequately developed).

The record before the Court supports the Bankruptcy Court's finding that Wachovia's due process claim lacks any serious merit and is unlikely to succeed on appeal. Regardless of the eventual result on appeal, Wachovia has not made a strong showing that it is likely to successfully appeal this issue because, at a minimum, judicial economy and Wachovia's own actions prompted the decision to consider the extent of the secured claim in the context of the Confirmation Hearing. More importantly, the Court is convinced that the Bankruptcy Court made its decision based on an abundant evidentiary record so that any procedural irregularity would be excused.

With regard to Wachovia's status as an under-secured creditor under 11 U.S.C. § 506, while Wachovia's arguments are well-made, the Court, sitting as it does in the posture of an appellate court, finds that Wachovia failed to show a strong probability of success on the merits in order to overcome the obvious irreparable harm that will inure to RoomStore if the stay is granted. Should

Wachovia succeed on appeal, an adequate remedy is available to satisfy future attempts to secure Wachovia's entitlement to any interests, fees and costs.

vi.

"It is one of the paramount interests of [a bankruptcy court] to assist the [d]ebtor in its reorganization efforts." American Film Tech., Inc. v. Taritero, 175 B.R. 847, 849 (Bankr. D. Del. 1994). This is especially true where a remedy can be fashioned after a successful appeal that allows the debtor to emerge from bankruptcy while preserving the creditor's right to seek to preserve its financial claims on appeal. Indeed, Wachovia has not argued that money or property will not be available to secure its claim if it successfully appeals the denial of its objections to the confirmation plan. Therefore, the public interest will not be served by staying the confirmation order.

vii.

For the foregoing reasons, the Court will deny Wachovia's motion for a stay pending appeal. The balance of the hardships substantially favors RoomStore and Wachovia did not demonstrate a strong likelihood of success on the merits of its claim in order to overcome the irreparable harm RoomStore will suffer by staying the confirmation order. Finally, with regard to the applicability of Bankruptcy Rule 7062 and the distinction between an adversary proceeding and a contested matter, this case is before the Court on appeal of a Confirmation Order, regardless of the fact that Wachovia appeals the decision to determine the cap issue as part of the confirmation hearing. Pursuant to Bankruptcy Rule 3020(b)(1), "[a]n objection to confirmation [of a Chapter 11 plan] is governed by Rule 9014." Rule 9014 makes a distinction between contested matters and formal adversary proceedings. In such contested matters, certain Bankruptcy Rules are not available. Specifically, the 1999 amendment to Rule 9014 struck Rule 7062 from the list of rules which apply to contested matters. As such, Wachovia is not entitled to a stay upon posting a supersedeas bond.

An appropriate Order shall issue.


ENTERED this 14th day of JUNE, 2005


                                                  /s/ James R. Spencer
                                            UNITED STATES DISTRICT JUDGE